Philip J. Nathanson   Arizona State Bar #013624
THE NATHANSON LAW FIRM
8765 E. Bell Rd. – Suite 110
Scottsdale, AZ  85260
(480) 419-2578
(480) 419-4136

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | | |
|---|---|---|
| ITORYE TAMAR SILVER, | : | No. |
| Plaintiff, | : | |
| vs. | : | **COMPLAINT** |
| TOM SLUTES and SLUTES, SAKRISON & ROGERS, P.C., | : | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| Defendants. | : | |

Plaintiff, ITORYE TAMAR SILVER, by and through her attorney, PHILIP J. NATHANSON of THE NATHANSON LAW FIRM, complains against defendants, TOM SLUTES and SLUTES, SAKRISON & ROGERS, P.C., and in support of this Complaint, plaintiff alleges as follows:

1. Plaintiff, ITORYE TAMAR SILVER, is a citizen of New York, who is currently living in Australia as a result of the events described in this Complaint (and will be referred to herein as the "CLIENT" or the "plaintiff").  Her minor child was living with her in Arizona when the Hague Convention Case described below was filed in this Court seeking the return of that minor child to Australia with the child's father, so that the courts of Australia could determine custody.

2.	Defendant, TOM SLUTES was, at all times material herein, an attorney licensed to practice law in the State of Arizona, and is a citizen of the State of Arizona.

3.	Defendant, SLUTES, SAKRISON & ROGERS, P.C., is a law firm in Tucson, Arizona, that is an Arizona professional corporation incorporated under the laws of Arizona, with it principal place of business in Tucson, Arizona. That professional corporation is therefore a citizen of Arizona for purposes of federal jurisdiction. Defendant, TOM SLUTES, was, at all times material herein, acting as an agent of SLUTES, SAKRISON & ROGERS, P.C., (and they will be sometimes collectively referred to herein as "SLUTES" or "defendant attorneys").

4.	This is an action for legal malpractice. The jurisdiction of this Court is invoked pursuant to the diversity jurisdiction provisions of 28 U.S.C. § 1332, in that there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.	Plaintiff retained and hired SLUTES to represent and defend the Client in a case arising under the Convention on Civil Aspects of International Child Abduction ("the Hague Convention"), and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §11601-11610, which case was then pending in this Court, and which case was denominated and entitled: "WILLIAM MICHAEL HANRAHAN, Petitioner v. ITORYE TAMAR SILVER," Case No. CV06-580-TUC-RCC, United States District Court, District of Arizona (hereinafter referred to as "the underlying case" or the "Hague Convention case").

6. On or about November 9, 2006, Petitioner WILLIAM MICHAEL HANRAHAN initiated the Hague Convention case in this Court by filing his Verified Petition for Return of Child ("Hague Convention Petition"). On or about November 16, 2006, the Petitioner in the Hague Convention case filed a Motion for, *inter alia*, Entry of a Temporary Restraining Order, with an accompanying brief. The plaintiff herein, who was the named respondent in the Hague Convention case, was served with that Hague Convention Petition on the day before Thanksgiving, in 2006. SLUTES did not respond to the Petitioner's Motion and prayers for relief. This Court scheduled the hearing on the merits of the Hague Convention Petition for December 4, 2006.

7. At the outset of the hearing in the Hague Convention case on December 4, 2006, the Clerk of this Court announced that the case came on for hearing on "temporary restraining order." However, counsel for the Petitioner informed the Court that the matter was set to determine the merits of the Hague Convention Petition to return the child to Australia. SLUTES did not object to that statement. Nor did SLUTES object to the matter going forward on the merits in view of the inadequate amount of time allotted to the respondent in the Hague Convention Case, the plaintiff herein, to prepare for a plenary hearing on the merits of the Hague Convention Petition. Counsel for the Petitioner in the Hague Convention Case then stated that "this will be the trial in the matter." No objection was made by SLUTES to that suggestion. This Court then stated from the bench that: "If we can get it done today, let's do it today." SLUTES did not

object to that comment by the Court, even though he knew, or should have known, that he did not have the witnesses and evidence needed to properly represent and defend his CLIENT at a hearing on the merits of said Petition.

8. SLUTES presented one witness at the hearing on said Petition, the respondent in the Hague Convention Case, the plaintiff herein.  Even though that witness testified to other witnesses that could have been available to prove her contentions had she had the opportunity to present same to the Court, she was left with describing the identity of those witnesses herself, rather than having the benefit of their testimony or deposition at the hearing on the merits.

9. At the conclusion of the December 4, 2006, hearing, SLUTES stated to the Court that the respondent in that Hague Convention Case had been "hamstrung on evidence."  Yet SLUTES did not preserve, via a Motion to Continue or otherwise, any objection to the hearing on the merits going forward in such a short period of time, less than one month after the filing of the Hague Convention Petition, and less than a few weeks after respondent was served with that Petition.

10. As a result of the foregoing, the Court granted the Hague Convention Petition and ordered that the minor child be returned to Australia with the father, the Petitioner in the Hague Convention Case.  The decision in the Hague Convention Case was that the courts and agencies in Australia would determine the custody of the minor child.

11. The foregoing defendant attorneys and the law firm defendant at all times material, implicitly informed and represented to the public generally, and the plaintiff specifically, that they, as attorneys, were qualified to represent the CLIENT in a Hague Convention Case, and possessed the requisite legal ability, skill, competence, know-how and information that other lawyers handling such legal matters possessed to properly represent the CLIENT as experts in that field would have represented her under the same or similar circumstances.

12. The foregoing defendant attorneys and law firm defendant, at all times material, owed the plaintiff, their Client, a duty to perform their job as attorneys as other experts in the field of Hague Convention cases would have acted under the same or similar circumstances.

13. After assuming the responsibility for the representation of the Client, the defendants breached their duty as attorneys that was owed to the plaintiff, and negligently committed one or more of the following wrongful acts and omissions:

(a) Defendants did not properly meet the factual and legal contentions of the Petitioner in the Hague Convention Case;

(b) Defendants did not object to the Hague Convention Case going forward with a trial on the merits before defendants had an opportunity to present witnesses and evidence on behalf of their CLIENT. Nor did defendants file any response to the Petitioner's request to combine the TRO hearing with the trial;

(c) Defendants knew that they had not had the time to secure witnesses and evidence for trial, and that the Petition was set for trial on December 4, 2006, yet defendants did not file a motion to continue the trial on the Petition in the Hague Convention Case;

(d) Defendants told their CLIENT, the plaintiff herein, to expect a procedural type of hearing on December 4, 2006, and therefore did not properly prepare the CLIENT to testify at a trial. The CLIENT felt completely unprepared to testify;

(e) Defendants knew that they had not had the time to secure witnesses and evidence for trial, yet at the conclusion of the December 4, 2006, hearing, defendants did not request, before the close of the proofs and evidence, an additional opportunity to adduce witnesses, testimony and evidence in opposition to the testimony and evidence which had been presented at the December 4, 2006, hearing in the Hague Convention Case;

(f) Defendants, while they persuaded the CLIENT that they could represent her as competently as other lawyers with experience in Hague Convention Cases, did not know, as a matter of legal expertise, the appropriate legal standards in such cases and therefore did not and could not properly prepare a defense for the CLIENT.

(g) When this Court entered the December 8, 2008, order, SLUTES knew or should have known, had he read the order, and had he possessed expertise under the Hague Convention, that the order mistakenly provided that the child's father was to have custody until custody was determined in Australia. It was the intent of this Court that the plaintiff herein, the mother of the child, have custody for a least 15 days after the entry of the December 8, 2006, order. This Court clarified its intent on December 13, 2006, at the request of the CLIENT's family, when it issued a written clarification order stating that the plaintiff herein was to have custody after the December 8th ruling. SLUTES did not have a motion to stay or an appeal prepared, as he had promised the CLIENT. The December 8th order stated that the minor child be placed in the custody of the father. SLUTES' failure to clarify the order immediately, and his failure to move for a stay and to appeal, resulted in the father removing the child to Australia.

13.     As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of the defendants, plaintiff sustained damage including, but not limited to, the following items:

(a) Plaintiff's child was sent back to Australia in the custody of the child's father as a result of the decision in the Hague Convention Case;

(b) Plaintiff had to return to Australia to live while trying to secure custody of her child in the courts of Australia.  Plaintiff has not been able to get a custody trial in Australia on her request for custody since that decision in the Hague Convention Case;

(c) Plaintiff felt helpless and became depressed in Australia.  She was isolated from her family and had difficulty in supporting herself in Australia. The return to Australia resulted in trauma, physical assault and negligence by the father to the child, and emotional distress to the plaintiff. Plaintiff was also in the zone of physical danger because she was subjected in Australia to violence, bullying and intimidation by the child's father;

(d) Plaintiff incurred substantial damages and expenses, including the costs of psychologists for herself and the minor child;

(e) Plaintiff incurred lost earnings because she had to abandon her teaching career in the United States;

(f) Plaintiff incurred travel expense to, and living expense in, Australia as a result of the need for her to return to Australia to fight for the custody of her minor child;

(g) Plaintiff incurred attorney fees because she had to retain other attorneys, both in the United States and in Australia, to litigate the foregoing matters.

1      WHEREFORE, Plaintiff, ITORYE TAMAR SILVER, requests this Court to enter judgment in her favor and against the defendants, TOM SLUTES and SLUTES, SAKRISON & ROGERS, P.C., in an amount in excess of $75,000, exclusive of interest and costs.

                          ITORYE TAMAR SILVER

              By:   <u>/s/  Philip J. Nathanson</u>
                    Philip J. Nathanson - Plaintiff's Attorney

Philip J. Nathanson   Arizona State Bar #013624
THE NATHANSON LAW FIRM
8765 E. Bell Rd. – Suite 110
Scottsdale, AZ  85260
(480) 419-2578
(480) 419-4136